UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN SANCHEZ,<br><br>      Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>      Defendant. | No. EDCV 08-1701-RC<br><br>OPINION AND ORDER |

Plaintiff Carmen Sanchez filed a complaint on December 3, 2008, seeking review of the Commissioner's decision denying her application for disability benefits. On May 27, 2009, the Commissioner answered the complaint, and the parties filed a joint stipulation on June 24, 2009.

## BACKGROUND

On October 25, 2006, plaintiff applied for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and the Supplemental Security Income program ("SSI") of Title XVI of the Act, 42 U.S.C. § 1382(a), claiming an inability to work since

1  May 2, 2006, due to mental problems.  Certified Administrative Record
2  ("A.R.") 87-99, 124-25.  The plaintiff's applications were initially
3  denied on March 29, 2007, and were again denied on May 25, 2007,
4  following reconsideration.  A.R. 51-62.  The plaintiff then requested
5  an administrative hearing, which was held before Administrative Law
6  Judge Joseph D. Schloss ("the ALJ") on July 8, 2008.  A.R. 19-46, 63.
7  On August 14, 2008, the ALJ issued a decision finding plaintiff is not
8  disabled.  A.R. 5-17.  The plaintiff appealed this decision to the
9  Appeals Council, which denied review on September 26, 2008.  A.R. 1-3.

## DISCUSSION

### I

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if substantial evidence supports the Commissioner's findings and whether the proper legal standards were used in reaching the decision.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).  "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001).  "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner."  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); Vasquez, 572 F.3d at 591.

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in

the national economy.[1]  20 C.F.R. §§ 404.1520(g), 416.920(g).

Applying the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.  (Step One).  The ALJ then found plaintiff has the severe impairments of a mood disorder not otherwise specified and an anti-social personality disorder (Step Two); however, plaintiff does not have an impairment or combination of impairments that meets or equals a Listing.  (Step Three).  Finally, the ALJ determined plaintiff can perform her past relevant work as a legal secretary, data entry clerk and receptionist; therefore, she is not

---

[1] Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.  Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir. 1998) (per curiam).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work.  20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(2-4), 416.920a(c)(2-4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R. §§ 404.1520a(d), 416.920a(d).  Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing.  20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).  Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]."  20 C.F.R. §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

disabled. (Step Four).

## II

A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009) (RFC is "a summary of what the claimant is capable of doing (for example, how much weight he can lift)."). Here, the ALJ found plaintiff "has the [RFC] to perform a full range of work at all exertional levels . . . [and she can perform] complex tasks but [she should] not . . . be responsible for any safety operations." A.R. 11. However, plaintiff contends this finding, as well as the Step Four determination, are not supported by substantial evidence because the ALJ failed: to properly consider the opinions of Samuel E. Dey, M.D., a treating psychiatrist; did not properly address the side effects of her medications; and did not properly consider her husband's statement. There is no merit to these claims.

**A. Dr. Dey's Opinion:**

The medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). Therefore, the ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician, Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Reddick,

1 | 157 F.3d at 725, and "[e]ven if [a] treating doctor's opinion is
2 | contradicted by another doctor, the ALJ may not reject this opinion
3 | without providing 'specific and legitimate reasons' supported by
4 | substantial evidence in the record."  Reddick, 157 F.3d at 725;
5 | Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

7 |     On May 30, 2007, Dr. Dey examined plaintiff, diagnosed her as
8 | having a bipolar disorder and depression, and determined her Global
9 | Assessment of Functioning ("GAF") was 50 and had been 85 in the past
10 | year.[2]  A.R. 253.  Dr. Dey found plaintiff was mildly anxious, but not
11 | agitated, and she was unable to establish good eye contact; however,
12 | he also found plaintiff's speech was clear, audible, understandable
13 | and not pressured, her thoughts were relevant and coherent, she
14 | verbalized in a free-flowing manner, and she was not experiencing
15 | auditory or visual hallucinations.  Id.

17 |     The plaintiff contends that although "the ALJ did offer an
18 | accurate summary of the treating source's opinion[,]" he did not

---

[2] A GAF of 41-50 means that the plaintiff exhibits "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).  However, a GAF of 85 indicates "[a]bsent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members)."  Id.

1 properly consider Dr. Dey's opinion that her GAF was 50.[3]  Jt. Stip.
2 at 14:24-28.  The Court disagrees.  First, an ALJ is not required to
3 give controlling weight to a treating physician's GAF score; indeed,
4 an ALJ's failure to mention a GAF score does not render his assessment
5 of a claimant's RFC deficient.  See Howard v. Comm'r of Soc. Sec., 276
6 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of consider-
7 able help to the ALJ in formulating the RFC, it is not essential to
8 the RFC's accuracy.  Thus, the ALJ's failure to reference the GAF
9 score in the RFC, standing alone, does not make the RFC inaccurate.");
10 Petree v. Astrue, 260 Fed. Appx. 33, 42 (10th Cir. 2007) (Unpublished
11 Disposition) ("[A] low GAF score does not alone determine disability,
12 but is instead a piece of evidence to be considered with the rest of
13 the record."); Ramos v. Barnhart, 513 F. Supp. 2d 249, 261 (E.D. Pa.
14 2003) ("Clinicians use a GAF scale to identify an individuals' [sic]
15 overall level of functioning, and a lower score 'may indicate problems
16 that do not necessarily relate to the ability to hold a job.'"
17 (citation omitted)); Baker v. Astrue, 2009 WL 279085, *3 (C.D. Cal.)
18 ("In evaluating the severity of a claimant's mental impairments, a GAF
19 score may help guide the ALJ's determination, but an ALJ is not bound
20 to consider it."); Florence v. Astrue, 2009 WL 1916397, *6 (C.D. Cal.)

---

[3]  Although plaintiff at times refers broadly to "treating sources," Jt. Stip. at 14:24-16:4, the only treating source plaintiff cites is Dr. Dey.  Jt. Stip. at 14:24-28.  Moreover, a marriage and family therapist is not an acceptable medical source, 20 C.F.R. §§ 404.1513(a), 416.913(a); however, an ALJ should, at a minimum, treat such evidence as qualified evidence akin to lay testimony, 20 C.F.R. §§ 404.1513(d)(3), 416.913(d)(3), and, as such, the ALJ must consider it.  Sprague, 812 F.2d at 1231-32.  Here, the ALJ did consider the marriage and family therapist's opinion, and rejected it for the same reasons as Dr. Dey's opinion, A.R. 16, which was proper for the reasons discussed herein.

7

("[W]ithout more, the ALJ's assessment of the medical record is not deficient solely because it does not reference a particular GAF score."); 65 Fed. Reg. 50746, 50764-65 ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listings.").

Second, and more importantly, the ALJ did consider Dr. Dey's GAF determination, as well as the GAF determination by the marriage and family therapist (discussed in note 3), stating:

> The undersigned has read and considered the treating records from Dr. Samuel E. Dey and . . . his assessment of a [GAF] score of 50 indicating serious symptoms with a high score of 85 in the past year that reflects absent or minimal symptoms. . . .  However, the undersigned finds these scores are of limited evidentiary value.  These subjectively assessed scores reveal only snapshots of impaired and improved behavior.  The undersigned gives more weight to the testimony of . . . medical expert [Joseph Malancharuvil, Ph.D.] and the objective details and chronology of the record, which more accurately describes the claimant's impairments and limitations.

A.R. 16.  The ALJ relied on Dr. Malancharuvil's opinion about the poor reliability of GAF scores and that Dr. Dey's opinion "does not preclude the claimant from engaging in activities[.]"  A.R. 15.  Thus, the ALJ provided specific and legitimate reasons for rejecting Dr. Dey's GAF determination, see, e.g., Borrie v. Astrue, 2009 WL 2579497,

1  *2 (C.D. Cal.) ("[T]he ALJ considered the GAF score, but finding such
2  scores unreliable, did not find it mandated disability.  This is a
3  specific and legitimate reason for discounting the score."); Taylor v.
4  Astrue, 2009 WL 4349553, *5 (C.D. Cal.) (same), and since Dr. Dey did
5  not set forth any functional limitations or otherwise limit
6  plaintiff's ability to work, the ALJ did not err.  Valentine, 574 F.3d
7  at 691.

**B.   Side Effects of Medication:**

   In determining a claimant's limitations, the ALJ must consider all factors that might have a significant impact on a claimant's ability to work, including the side effects of medication.  Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993); Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 585 (9th Cir. 1988).  Thus, when a claimant testifies that she is experiencing a side effect known to be associated with a particular medication, the ALJ may disregard the testimony only if he "support[s] that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medication(s)."  Varney, 846 F.2d at 585.

   In asserting the ALJ failed to consider the side effects she experiences from the medication she takes, plaintiff cites several 2006 reports, see A.R. 128, 156-57, 167, in which she stated, among other things, that she was taking:  Lithium and Risperdal, which cause
//
//
//

// 
// 
// 

her to produce breast milk;[4] Prozac, which makes her want to be alone;[5] Trazodone and Zyprexa, which make her sleepy;[6] Clonidine, which makes her sleepy and tired;[7] and Tegretol, which simply made her calmer and mellow.[8]  See A.R. 128, 156-57, 167.  However, at the

---

[4] Lithium "is used to treat the manic episodes of manic-depressive illness, a condition in which a person's mood swings from depression to excessive excitement[,]" while "Risperdal is prescribed to treat severe mental illnesses such as schizophrenia."  The PDR Family Guide to Prescription Drugs, 363, 586 (8th ed. 2000).  Breast milk production is not a recognized side effect of either Lithium or Risperdal.  Id. at 363-64, 586.

[5] "Prozac is prescribed for the treatment of [major] depression — that is, a continuing depression that interferes with daily functioning."  The PDR Family Guide to Prescription Drugs at 554.  Antisocial behavior is a rare side effect of Prozac.  Id. at 555.

[6] Trazodone, also called Desyrel, "is prescribed for the treatment of depression[,]" while "Zyprexa helps manage symptoms of schizophrenia and other psychotic disorders."  The PDR Family Guide to Prescription Drugs at 198, 690, 773.  Drowsiness is a common side effect of both Trazodone and Zyprexa.  Id. at 198, 773-74.  Moreover, sleepiness is a common side effect of Risperdal.  Id. at 586.

[7] Clonidine, also called Catapres, "is prescribed for high blood pressure."  The PDR Family Guide to Prescription Drugs at 113, 139.  Drowsiness is a common side effect of Clonidine.  Id. at 114.

[8] "Tegretol is used in the treatment of seizure disorders, including certain types of epilepsy.  It is also prescribed for trigeminal neuralgia (severe pain in the jaws) and pain in the tongue and throat.  [¶]  In addition, some doctors use Tegretol to treat alcohol withdrawal, cocaine addiction, and emotional disorders such as depression and abnormally aggressive behavior.  The drug is also used to treat migraine headaches and 'restless legs.'"  The PDR Family Guide to Prescription Drugs at 654.

1 administrative hearing in 2008, plaintiff testified that the only
2 //
3 //
4 medication of the 2006 medications she was still taking was Zyprexa,[9]
5 and, despite being asked, she did not identify any side effects from
6 that medication.[10]  See A.R. 28-34.  Further, plaintiff testified that
7 she now takes Ambien to help her sleep.  A.R. 33-34.

9     The plaintiff's testimony is, thus, consistent with the ALJ's
10 findings that she does not have any current side effects from the
11 medication she takes, and the medication has improved her condition.
12 See A.R. 12 ("The claimant admitted her medications help improve her
13 symptoms and help her to sleep."); see also A.R. 198, 252, 265, 267.
14 Therefore, the ALJ did not err in not further discussing the alleged
15 side effects from plaintiff's medications.[11]  Greger v. Barnhart, 464
16 F.3d 968, 973 (9th Cir. 2006); see also McFarland v. Astrue, 288
17 Fed. Appx. 357, 360 (9th Cir. 2008) ("[Claimant] claims the ALJ failed
18 to consider medication side effects.  However, [claimant] points to no
19 specific evidence in the record where he complained of medication side

---

[9] Plaintiff's testimony is not supported by the medical record, which shows prescription of Zyprexa was discontinued in August 2006, A.R. 204, and plaintiff has not been prescribed this medication since then.  See A.R. 194-203, 252-53, 257-74.

[10] The plaintiff also testified she was taking Abilify, Ambien, Citalopram and Klonopin, and did not state any side effects from these medications.  A.R. 28.

[11] Moreover, since plaintiff does not challenge the ALJ's negative credibility determination, that also provides a basis for rejecting any statements plaintiff may have made about alleged side effects from medications.  Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002).

effects. To the contrary, the record is replete with statements by [claimant] to medical care providers that he was not experiencing side effects from his various medications. Thus, we find the ALJ did not err in failing to address side effects of medication in his decision.").

**C.  Lay Witness Statement:**

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Valentine, 574 F.3d at 694. "Further, the reasons 'germane to each witness' must be specific." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006).

On November 14, 2006, plaintiff's then-husband, Reynard Gaines, reported plaintiff: spends her time in bed "not wanting to do anything" and watches television all day; "tries" to care of "the children" but that he "get[s] [the] kids ready for school, do[es] homework and feed[s] [and] bathe[s] them"; is awake all night; needs reminders to "[g]et dress[ed], brush [her] teeth" and "take her medication"; "has no motivation to cook"; needs help to "put away the laundry [and] help with dishes"; "doesn't want to be around people" and doesn't go anywhere, yet "always wants someone around her"; goes grocery shopping and pays bills, but "spends more than . . . we have"; can follow written instructions but "you have to repeat to her a lot"; and does not handle stress well, pulling her hair out when she gets

12

1 stressed.  A.R. 139-46.  Gaines summarized that his "wife is a very
2 loving lady when she takes her medication.  She has a lot of issues
3 that [she] needs help on."  A.R. 146.

5    Here, the ALJ "read and considered" Mr. Gaines's report and found
6 it was "not consistent within the[] same report[]," not consistent
7 with plaintiff's "statements to the consultative examiner," and "not
8 consistent with the overall medical evidence and the testimony of the
9 medical expert."  A.R. 12.  For instance, although Mr. Gaines stated
10 plaintiff did nothing all day except watch television, in 2007,
11 plaintiff told examining psychiatrist Romualdo R. Rodriguez, M.D.,
12 that "[s]he is able to take care of household chores, yard and
13 gardening work, cooking, going to the store, and running errands.
14 . . ."  A.R. 220.  Under these circumstances, the ALJ gave specific
15 reasons for disregarding Mr. Gaines's report, and did not err.
16 Valentine, 574 F.3d at 694; Carmickle v. Comm'r, Soc. Sec. Admin., 533
17 F.3d 1155, 1164 (9th Cir. 2008).

19    Since there is no merit to plaintiff's claims, the Commissioner's
20 decision should be affirmed.

**ORDER**

23    IT IS ORDERED that: (1) plaintiff's request for relief is denied;
24 and (2) the Commissioner's decision is affirmed, and Judgment shall be
25 entered in favor of defendant.

27 DATE:  January 21, 2010          /S/ Rosalyn M. Chapman
                                    ROSALYN M. CHAPMAN
28                                  UNITED STATES MAGISTRATE JUDGE

13

R&R-MDO\08-1701.mdo
1/21/10